UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ITT EDUCATIONAL SERVICES, INC., *et al.*[1] | ) | Case No.  16-07207-JMC-7A |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| DEBORAH J. CARUSO, as CHAPTER 7 | ) | |
| TRUSTEE for ITT EDUCATIONAL | ) | |
| SERVICES, INC., ESI SERVICE CORP. and | ) | |
| DANIEL WEBSTER COLLEGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ADVERSARY COMPLAINT**

Deborah J. Caruso, ("Trustee" or "Plaintiff"), as chapter 7 trustee in the above-captioned

cases of ITT Educational Services, Inc., ("ITT"), ESI Service Corp. and Daniel Webster College,

Inc. (collectively referred to herein as either ITT or "Debtors"), by and through her undersigned

counsel, hereby alleges as and for her complaint against the United States Department of

Education ("ED" or "Defendant"), the following:

**NATURE OF THE ACTION**

1.      The Trustee brings this action pursuant to §§ 105, 541, 544, 547, 548, 550 and

551 of title 11 of the United States Code (11 U.S.C. §101 *et seq*., the "Bankruptcy Code") and §§

32-18-2-14 and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act to avoid and/or

---

[1] The debtors in these cases, along with the last four digits of their respective federal tax identification numbers are
ITT Educational Services, Inc. [1311]; ESI Service Corp. [2117]; and Daniel Webster College, Inc. [5980].

recover, where applicable, as voidable preferences and/or fraudulent transfers (a) approximately $79,707,879 that ITT's former management transferred to the ED on or about December 17, 2015 (the "December 2015 Transfer"), and (b) approximately $14,646,101 that ITT's former management transferred to the ED on or about July 20, 2016 (the "July 2016 Transfer" and together with the December 2015 Transfer, the "Transfers").  The Trustee also seeks to recover from the ED all damages sustained by ITT by reason of (a) the ED's breaches of the September 15, 2014 and October 24, 2014 program participation agreements, (b) the ED's breach of the Escrow Agreement (as herein defined), (c) the ED's fraudulent inducement to make the Transfers, (d) the ED's unjust enrichment by reason of the benefit it received by receiving the Transfers, and (e) negligent oversight of ITT's former management.  In addition, the Trustee seeks to disallow and/or equitably subordinate the ED's proofs of claim, filed on March 13, 2017 (the "EDPOCs"), in the Debtors' Chapter 7 case.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334.

3.     That part of this adversary proceeding that involves claims to (a) avoid and recover voidable preferences and fraudulent transfers and (b) to equitably subordinate the EDPOCs constitutes a core proceeding for purposes of 28 U.S.C. §157(b)(2)(B), (F) and (H). This Court also has jurisdiction to hear and report on the breach of contract and fraudulent inducement claims pursuant to 28 U.S.C. §157(c).

4.     In the event this adversary proceeding is found to be "non-core," Plaintiff consents to the entry of final orders and judgments by the Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.      This adversary proceeding is brought pursuant to Rule 7001 of the Bankruptcy Rules, §§ 105, 541, 544, 547, 548, 550 and 551 of the Bankruptcy Code, and the applicable provisions of Indiana's Uniform Fraudulent Transfer Act.

6.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with the above-captioned chapter 7 cases.

**THE PARTIES**

7.      On September 16, 2016 (*i.e.*, the Petition Date), the Debtors each filed in this Court voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  Prior to the Petition Date, ITT was a publicly traded for-profit higher education company that was organized under the laws of the State of Delaware.  All of the Debtors maintained their principal place of business in Carmel, Indiana.  On the Petition Date, the Trustee was appointed as the chapter 7 trustee in each of the Debtors' cases pursuant to section 701(a)(1) of the Bankruptcy Code.

8.      Upon information and belief, the ED is a federal agency headquartered in the District of Columbia with its principal office located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

**STATEMENT OF RELEVANT FACTS**

**Background of ITT**

9.      ITT was founded in 1946 and became a publicly traded company in 1994.  Prior to filing for bankruptcy, ITT grew to be one of the largest for-profit education companies in the country, offering master, bachelor and associate degree programs at its approximately 137 campus locations and online programs to students located in all 50 states and the District of

3

Columbia in a number of subjects, including electronics, drafting and design, criminal justice, business, information technology, health sciences and nursing.

10.    By at least 2012, ITT became the subject of various governmental investigations and lawsuits with allegations concerning potentially unlawful acts or practices relating to the advertising, marketing, and origination of private student loans, potential misrepresentations in financial aid, recruitment and other areas, the potential submission of false claims to the ED, the creation of subsidized loan programs that ITT should have known students would not be able to repay, and false or misleading representations about financial aid and debt collection practices.

11.    As a result of the foregoing, the ED, upon information and belief, feared that it had significant financial exposure on account of ITT.  Upon further information and belief, to address its existing and future financial exposure relating to ITT, the ED sought to (a) secure as much of ITT's current cash as possible before ITT imploded to offset the ED's own potential liability to ITT's students, and (b) take affirmative steps to ensure ITT's closure prior to the beginning of the 2016-2017 school year so as to preclude ITT from receiving additional Title IV funds, thereby limiting the ED's future liability on loans to ITT students.  Upon information and belief, the ED's goal was to effectively jump ahead of ITT's other unsecured creditors when ITT filed for bankruptcy as the ED anticipated would happen.

12.    By letter dated August 21, 2014, the ED determined that ITT was not "financially responsible" because it did not submit its 2013 audited financial statements and compliance audits to the ED by the June 30, 2014 deadline.

13.    The ED nonetheless provisionally certified ITT, thereby allowing it to remain eligible to receive Title IV Funds, subject to two program participation agreements, approved by

4

the ED Secretary on September 15, 2014 and October 24, 2014 (together, the "PPAs"), which set forth the terms of ITT's continued participation under the Higher Education Act (the "HEA").

14.     In addition to the various covenants and obligations under the PPAs, the ED required ITT to post a $79,707,879 letter of credit ("LC") to protect against any liability the ED might incur, *inter alia*, in the event of ITT's closure.

15.     The August 21, 2014 letter also placed ITT on heightened cash monitoring, meaning that ITT would have to submit additional financial documentation to the ED on a periodic basis.

16.     By letter dated May 20, 2015, the ED required ITT to provide a bi-weekly report of ITT's 13-week cash flow statement with financial disclosure notes.  The stated basis for requiring the additional reporting requirements was the commencement of the SEC's civil fraud action against ITT, Modany and Fitzpatrick.

17.     If the ED had simply revoked ITT's eligibility to receive Title IV funding in August 2015, ITT would likely have had no choice but to promptly filed for bankruptcy, leaving the ED with significant exposure on existing loans to ITT students but with none of ITT's cash in its possession and control to offset such potential liabilities.  The ED would then be left as one of many unsecured creditors vying for ITT's limited assets.

18.     In or about December 2015, ITT's LC was replaced with a cash escrow held by the ED.  Pursuant to a December 15, 2015 "Escrow Agreement," ITT placed $79,707,879 into the Escrow Account on December 17, 2015.  Upon information and belief, ITT only agreed to make the December 2015 Transfer to the ED's Escrow Account on the assumption that in doing so it would, among other things, remain eligible to receive Title IV funds for the 2016-2017 academic year.

19.    The Escrow Agreement provides, *inter alia*, that the ED "agrees to hold funds on behalf of ITT" and that the ED "will maintain funds" placed in the Escrow Account for the following purposes to: (a) pay refunds of institutional or non-institutional charges owed to or on behalf of former students of [ITT], whether [ITT] remains open or has closed; (b) provide for the "teach-out" of students enrolled at the time of closure of [ITT]; and (c) pay for any liabilities owing to the Secretary arising from acts or omissions by [ITT], on or before the expiration of the agreement for [the ED] to hold these funds, in violation of requirements set forth in the [HEA], including the violation of any agreement entered into by [ITT] with the Secretary regarding the administration of programs under Title IV of the HEA.

20.    On or about June 6, 2016, the ED demanded that ITT provide it with an additional $44 million in escrowed funds.  Upon information and belief, ITT's former management advised the ED that it would be difficult for ED to make this payment.

21.    On July 6, 2016, the ED informed ITT that it could fulfill the additional $44 million escrow obligation in three installments due July 20, 2016, September 30, 2016, and November 30, 2016.  The first installment was paid on July 20, 2016 in an amount equal to about $14,646,101.  After the July 20, 2016 transfer, the total amount in the Escrow Account was approximately $94,353,980.  Upon information and belief, ITT only agreed to make the July 2016 payment to the ED's Escrow Account on the assumption that in doing so it would remain eligible to receive Title IV funds for the 2016-2017 academic year.

22.    On August 25, 2016, the ED sent ITT a letter in which it demanded that ITT increase the escrowed amount by an additional $152.9 million within 30 days to $247,292,364.  The ED stated that the increase was supposedly necessitated by: (a) ITT's inability to resolve the concerns raised by ITT's accreditor, the Accrediting Council for Independent Colleges and

Schools ("ACICS"), set forth in ACICS' August 17, 2016 letter; and (b) a decision rendered by the National Advisory Council on Institutional Quality and Integrity ("NACIQI") recommending that the ED not re-recognize ACICS as an accrediting agency.  The ED's August 25, 2016 letter further stated that ITT's failure to comply with the demanded increase in escrowed funds would result in the ED suspending ITT's eligibility to admit students who receive Title IV loans.  That same day, the ED issued a press release noting that it was barring ITT from enrolling new Title IV students.

23.     On September 6, 2016, ITT's former management announced that ITT was permanently shutting down its academic operations and firing the overwhelming majority of its more than 8,000 employees.

24.     On September 16, 2016, the Debtors filed for bankruptcy.

**COUNT I – AVOIDANCE OF JULY 2016 TRANSFER**
**PURSUANT TO SECTION 547(b)(4)(A) OF THE BANKRUPTCY CODE**

25.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 24 above as if fully set forth herein.

26.     On or about July 20, 2016, ITT transferred approximately $14,646,100 into the ED's Escrow Account, *i.e.*, the July 2016 Transfer.

27.     The ED was at the time of the July 2016 Transfer (and remains today) a creditor of ITT.

28.     The July 2016 Transfer was on account of an antecedent debt.

29.     The July 2016 Transfer was made within 90 days of the Petition Date.

30.     At the time of the July 2016 Transfer, ITT was insolvent.

31.     If the ED is entitled to keep the July 2016 Transfer, it will receive more than it otherwise would receive as an unsecured creditor in the Debtors' chapter 7 case.

32.    The July 2016 Transfer may be avoided under Section 547 of the Bankruptcy Code.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) declaring the July 2016 Transfer to have been a voidable preference pursuant to Section 547 of the Bankruptcy Code; (b) avoiding the July 2016 Transfer as being in violation of Section 547 of the Bankruptcy Code; (c) requiring the ED to repay the July 2016 Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; and (d) granting Plaintiff such other and further relief as may be just and proper.

### COUNT II – AVOIDANCE OF DECEMBER 2015 TRANSFER PURSUANT TO SECTION 547(b)(4)(B) OF THE BANKRUPTCY CODE

33.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 32 above as if fully set forth herein.

34.    On or about December 10, 2015, ITT transferred approximately $79,707,879 into the ED's Escrow Account, *i.e.*, the December 2015 Transfer.

35.    The ED was at the time of the December 2015 Transfer (and remains today) a creditor of ITT.

36.    The December 2015 Transfer was on account of an antecedent debt.

37.    At the time of the December 2015 Transfer, ITT was insolvent.

38.    The December 2015 Transfer was made within one year of the Petition Date.

39.    The ED constitutes a non-statutory insider of ITT.

40.    If the ED is entitled to keep the December 2015 Transfer, it will receive more than it otherwise would receive as an unsecured creditor in the Debtors' chapter 7 case.

41.    The December 2015 Transfer may be avoided under Section 547 of the Bankruptcy Code.

8

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) declaring the December 2015 Transfer to have been a voidable preference pursuant to Section 547 of the Bankruptcy Code; (b) avoiding the December 2015 Transfer as being in violation of Section 547 of the Bankruptcy Code; (c) requiring the ED to repay the December 2015 Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; and (d) granting Plaintiff such other and further relief as may be just and proper.

### COUNT III – AVOIDANCE OF JULY 2016 TRANSFER PURSUANT TO SECTIONS 544 AND 548(a)(1)(B) OF THE BANKRUPTCY CODE AND SECTIONS 32-18-2-14(2) AND 32-18-2-15 OF INDIANA'S UNIFORM FRAUDULENT TRANSFER ACT

42.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 41 above as if fully set forth herein.

43.     ITT made the July 2016 Transfer without receiving reasonably equivalent value.

44.     At the time the July 2016 Transfer was made: (a) ITT was insolvent; (b) ITT became insolvent on the date that such transfer was made or incurred; (c) ITT became insolvent as a result of such transfer; (d) ITT was engaged in business or a transaction, or was about to engage in business or a transaction, for which ITT's remaining property constituted unreasonably small capital; and/or (e) ITT's former management intended to incur, or believed that they would incur, on ITT's behalf, debts that would be beyond ITT's ability to pay as such debts matured.

45.     At the time the July 2016 Transfer was made, there existed at least one actual creditor of ITT that was harmed by the July 2016 Transfer, including the IRS.

46.     The July 2016 Transfer may be avoided under Sections 544 and 548(a)(1)(B) of the Bankruptcy Code and Sections 32-18-2-14(2) and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) declaring the July 2016 Transfer to have been a fraudulent transfer pursuant to Sections 544 and 548(a)(1)(B) of the Bankruptcy Code and Sections 32-18-2-14(2) and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act; (b) avoiding the July 2016 Transfer as being in violation of Sections 544 and 548(a)(1)(B) of the Bankruptcy Code and Sections 32-18-2-14(2) and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act; (c) requiring the ED to repay the July 2016 Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; and (d) granting Plaintiff such other and further relief as may be just and proper.

### COUNT IV – AVOIDANCE OF DECEMBER 2015 TRANSFER PURSUANT TO SECTIONS 544 AND 548(a)(1)(B) OF THE BANKRUPTCY CODE AND SECTIONS 32-18-2-14(2) AND 32-18-2-15 OF INDIANA'S UNIFORM FRAUDULENT TRANSFER ACT

47.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48.     ITT made the December 2015 Transfer without receiving reasonably equivalent value.

49.     At the time the December 2015 Transfer was made: (a) ITT was insolvent; (b) ITT became insolvent on the date that such transfer was made or incurred; (c) ITT became insolvent as a result of such transfer; (d) ITT was engaged in business or a transaction, or was about to engage in business or a transaction, for which ITT's remaining property constituted unreasonably small capital; and/or (e) ITT's former management intended to incur, or believed that they would incur, on ITT's behalf, debts that would be beyond ITT's ability to pay as such debts matured.

50.     At the time the December 2015 Transfer was made, there existed at least one actual creditor of ITT that was harmed by the December 2015 Transfer, including the IRS.

51.     The December 2015 Transfer may be avoided under Sections 544 and 548(a)(1)(B) of the Bankruptcy Code and Sections 32-18-2-14(2) and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) declaring the December 2015 Transfer to have been a fraudulent transfer pursuant to Sections 544 and 548(a)(1)(B) of the Bankruptcy Code and Sections 32-18-2-14(2) and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act; (b) avoiding the December 2015 Transfer as being in violation of Sections 544 and 548(a)(1)(B) of the Bankruptcy Code and Sections 32-18-2-14(2) and 32-18-2-15 of Indiana's Uniform Fraudulent Transfer Act; (c) requiring the ED to repay the December 2015 Transfer , plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; and (d) granting Plaintiff such other and further relief as may be just and proper.

### COUNT V – AVOIDANCE OF JULY 2016 TRANSFER PURSUANT TO SECTIONS 544 AND 548(a)(1)(A) OF THE BANKRUPTCY CODE AND SECTION 32-18-2-14(1) OF INDIANA'S UNIFORM FRAUDULENT TRANSFER ACT

52.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

53.     The July 2016 Transfer was made with the actual intent to hinder, delay, or defraud ITT's creditors.

54.     At the time July 2016 Transfer was made, there existed at least one actual creditor of ITT that was harmed by the July 2016 Transfer, including the IRS.

55.     The July 2016 Transfer may be avoided under Sections 544 and 548(a)(1)(A) of the Bankruptcy Code and Section 32-18-2-14(1) of Indiana's Uniform Fraudulent Transfer Act.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) declaring the July 2016 Transfer to have been a fraudulent transfer pursuant to Sections 544 and 548(a)(1)(A) of the Bankruptcy Code and Section 32-18-2-14(1) of Indiana's Uniform Fraudulent Transfer Act; (b) avoiding the July 2016 Transfer as being in violation of Sections 544 and 548(a)(1)(A) of the Bankruptcy Code and Section 32-18-2-14(1) of Indiana's Uniform Fraudulent Transfer Act; (c) requiring the ED to repay the July 2016 Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; and (d) granting Plaintiff such other and further relief as may be just and proper.

### COUNT VI – AVOIDANCE OF DECEMBER 2015 TRANSFER PURSUANT TO SECTIONS 544 AND 548(a)(1)(A) OF THE BANKRUPTCY CODE AND SECTION 32-18-2-14(1) OF INDIANA'S UNIFORM FRAUDULENT TRANSFER ACT

56.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 55 above as if fully set forth herein.

57.     The December 2015 Transfer was made with the actual intent to hinder, delay, or defraud ITT's creditors.

58.     At the time December 2015Transfer was made, there existed at least one actual creditor of ITT that was harmed by the December 2015Transfer, including the IRS.

59.     The December 2015Transfer may be avoided under Sections 544 and 548(a)(1)(A) of the Bankruptcy Code and Section 32-18-2-14(1) of Indiana's Uniform Fraudulent Transfer Act.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) declaring the December 2015Transfer to have been a fraudulent transfer pursuant to Sections 544 and 548(a)(1)(A) of the Bankruptcy Code and Section 32-18-2-14(1) of Indiana's Uniform Fraudulent Transfer Act; (b) avoiding the December 2015Transfer as being in violation of

Sections 544 and 548(a)(1)(A) of the Bankruptcy Code and Section 32-18-2-14(1) of Indiana's Uniform Fraudulent Transfer Act; (c) requiring the ED to repay December 2015Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; and (d) granting Plaintiff such other and further relief as may be just and proper.

**COUNT VII – RECOVERY OF PROPERTY PURSUANT
TO SECTIONS 550 AND 551 OF THE BANKRUPTCY CODE**

60.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     The Transfers are avoidable pursuant to Section 544 of the Bankruptcy Code, and as a result, each of those Transfers are recoverable by Plaintiff pursuant to Section 550 of the Bankruptcy Code.

62.     Pursuant to Section 551 of the Bankruptcy Code, any transfer that is avoided under Section 544 Bankruptcy Code is preserved for the benefit of Plaintiff, the beneficiaries of which are creditors of Debtors' Chapter 7 estates.

**WHEREFORE,** Plaintiff respectfully requests that the Court: (a) enter a money judgment against the ED in an amount equal to the sum of the Transfers, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; (b) enter a judgment requiring the Defendants to pay all of the aforesaid sums to Plaintiff; (c) disallow any claim the ED may have against Plaintiff until such time as it pays the aforementioned amount to Plaintiff pursuant to 11 U.S.C. §502(d); and (d) grant Plaintiff such other and further relief as may be just and proper.

## COUNT VIII – FRAUDULENT INDUCEMENT
## TO MAKE THE JULY 2016 TRANSFER

63.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 62 above as if fully set forth herein.

64.     The ED fraudulently induced ITT to make the July 2016 Transfer by making multiple material omissions that misled ITT to believe that, by complying with the ED's demand to make the July 2016 Transfer, ITT would remain eligible to receive Title IV Funds.

65.     The Trustee made the material omissions with the intent to deceive ITT into making the July 2016 Transfer, and ITT relied upon such material omissions in making the July 2016 Transfer to the ED's Escrow Account.

66.     The Trustee's material omissions proximately caused ITT's loss in an amount equal to the July 2016 Transfer.

67.     Upon information and belief, the ED intended to cause the harm to ITT, and acted willfully and wantonly to cause that harm.  Accordingly, Plaintiff is also entitled to an award of punitive damages.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, but in an amount no less than the amount of the July 2016 Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; (b) awarding Plaintiff punitive damages in an amount to be determined at trial; and (c) granting Plaintiff such other and further relief as may be just and proper.

14

## COUNT IX – FRAUDULENT INDUCEMENT
## TO MAKE THE DECEMBER 2015 TRANSFER

68.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

69.     The ED fraudulently induced ITT to make the December 2015 Transfer by making multiple material omissions that misled ITT to believe that, by complying with the ED's demand to make the December 2015 Transfer, ITT would remain eligible to receive Title IV Funds.

70.     The Trustee made the material omissions with the intent to deceive ITT into making the December 2015 Transfer, and ITT relied upon such material omissions in making the December 2015 Transfer to the ED's Escrow Account.

71.     The Trustee's material omissions proximately caused ITT's loss in an amount equal to the December 2015 Transfer.

72.     Upon information and belief, the ED intended to cause the harm to ITT, and acted willfully and wantonly to cause that harm.  Accordingly, Plaintiff is also entitled to an award of punitive damages.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, but in an amount no less than the amount of the December 2015 Transfer, plus interest, reasonable attorneys' fees, costs and expenses to the extent permissible by applicable law; (b) awarding Plaintiff punitive damages in an amount to be determined at trial; and (c) granting Plaintiff such other and further relief as may be just and proper.

15

## COUNT X – BREACH OF SEPTEMBER 15, 2014
## PROGRAM PARTICIPATION AGREEMENT

73.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 72 above as if fully set forth herein.

74.     The September 15, 2014 program participation agreement constitutes a valid and enforceable contract between ITT and the ED.

75.     The ED breached its obligations under the September 15, 2014 program participation agreement.

76.     The ED also breached its duty of good faith and fair dealing under the September 15, 2014 program participation agreement to deny ITT the benefit of the bargained-for benefits under that agreement.

77.     As a direct and proximate result of the ED's breaches of the September 15, 2014 program participation agreement, ITT has been injured in an amount to be determined at trial, plus interest.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, plus interest, costs and expenses to the extent permissible by applicable law; and (b) granting Plaintiff such other and further relief as may be just and proper.

## COUNT XI – BREACH OF OCTOBER 24, 2014
## PROGRAM PARTICIPATION AGREEMENT

78.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

79.     The October 24, 2014 program participation agreement constitutes a valid and enforceable contract between ITT and the ED.

80.     The ED breached its obligations under the October 24, 2014 program participation agreement.

81.     The ED also breached its duty of good faith and fair dealing under the October 24, 2014 program participation agreement to deny ITT the benefit of the bargained-for benefits under that agreement.

82.     As a direct and proximate result of the ED's breaches of the October 24, 2014 program participation agreement, ITT has been injured in an amount to be determined at trial, plus interest.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, plus interest, costs and expenses to the extent permissible by applicable law; and (b) granting Plaintiff such other and further relief as may be just and proper.

## COUNT XII – BREACH OF ESCROW AGREEMENT

83.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 82 above as if fully set forth herein.

84.     The Escrow Agreement constitutes a valid and enforceable contract between ITT and the ED.

85.     The ED breached its obligations under the Escrow Agreement.

86.     As a direct and proximate result of the ED's breach of the Escrow Agreement, ITT has been injured in an amount to be determined at trial, plus interest.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, plus interest, costs and

expenses to the extent permissible by applicable law; and (b) granting Plaintiff such other and further relief as may be just and proper.

## COUNT XII – NEGLIGENCE

87.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 86 above as if fully set forth herein.

88.    The ED owed a duty to enforce its own regulations to investigate the conduct of ITT's former management and, if necessary terminate ITT's eligibility to participate in the HEA, when the ED became aware of, among other things, alleged misconduct and violations of the HEA by ITT's former management as disclosed in the investigations and court proceedings by the Consumer Fraud Protection Bureau, the Securities and Exchange Commission, and multiple state Attorney General offices.

89.    The ED breached that duty.

90.    ITT was damaged as a result of the ED's breach, including without limitation, being subject to claims by ITT's students as well as making the Transfers to the ED.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, plus interest, costs and expenses to the extent permissible by applicable law; and (b) granting Plaintiff such other and further relief as may be just and proper.

## COUNT XIII – UNJUST ENRICHMENT

91.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 90 above as if fully set forth herein.

92.    Alternatively, if it is determined that the December 2015 Transfer and the July 2016 Transfer are not voidable and/or recoverable under any of the prior Counts in this Complaint, then ITT alleges that:

a.    the ED was unjustly enriched by reason of receiving the December 2015 Transfer and the July 2016 Transfer from ITT;

b.    ITT was impoverished as a result of making the December 2015 Transfer and the July 2016 Transfer to the ED;

c.    there is a causal connection between the ED's enrichment and ITT's impoverishment;

d.    there is no justification for the ED to retain the December 2015 Transfer and the July 2016 Transfer from ITT; and

e.    ITT is without any remedy at law.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) awarding Plaintiff damages in an amount to be determined at trial, plus interest, costs and expenses to the extent permissible by applicable law; and (b) granting Plaintiff such other and further relief as may be just and proper.

## COUNT XIV – DISALLOWANCE OF THE EDPOCs
## UNDER SECTION 502(e)(1) OF THE BANKRUPTCY CODE

93.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 92 above as if fully set forth herein.

94.    The EDPOCs are predicated, in part, on contingent liability of the ED to claims by ITT's students that ITT's former management violated state common law and statutes that give rise to borrower defense liabilities. The conduct complained of by ITT's students, to the

extent it is determined that they have a claim, is also prohibited by the ED's regulations to which ITTT was subject.

95.     At the time the ED entered into PPAs, the Escrow Agreement, and made successive demands to increase the amount of surety by ITT, the ED was aware that ITT was the subject of, among other things, investigations and court proceedings by the Consumer Fraud Protection Bureau, the Securities and Exchange Commission, and multiple state Attorney General offices, alleging that ITT had engaged in practices that violated the HEA.

96.     Accordingly, the EDPOCs, based on borrower defense liabilities, should be disallowed to the extent either (a) they constitute contingent claims for contribution by a co-liable actor or (b) the underlying claims by ITT's students are disallowed.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) disallowing, in whole or in part, the EDPOCs in an amount to be determined at trial; and (b) granting Plaintiff such other and further relief as may be just and proper.

## COUNT XV – EQUITABLE SUBORDINATION
## PURSUANT TO SECTION 510(c) OF THE BANKRUPTCY CODE

97.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 96 above as if fully set forth herein.

98.     The EDPOCs should be equitably subordinated to the claims of all other creditors.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a Judgment: (a) equitably subordinating the EDPOCs to the proofs of claims of all other creditors of the Debtors; and (b) granting Plaintiff such other and further relief as may be just and proper.

Dated:  September 7, 2018
          Indianapolis, Indiana

Respectfully submitted,

/s/ John C. Hoard             

| | |
|---|---|
| Jeff J. Marwil (admitted *pro hac vice*) | Deborah J. Caruso (Atty. No. 4273-49) |
| Peter J. Young | John C. Hoard (Atty. No. 8024-49) |
| Jeramy D. Webb | Meredith R. Theisen (Atty. No. 28804-49) |
| **PROSKAUER ROSE LLP** | **RUBIN & LEVIN, P.C.** |
| Three First National Plaza, Suite 3800 | 135 N. Pennsylvania Street, Suite 1400 |
| Chicago, Illinois 60602-4342 | Indianapolis, Indiana 46204 |
| Telephone:  (312) 962-3550 | Telephone:  (317) 634-0300 |
| Facsimile:   (312) 962-3551 | Facsimile:   (317) 263-9411 |

--and--

*Co-Counsel to the Trustee*

Timothy Q. Karcher (admitted *pro hac vice*)
Steven H. Holinstat
Russell T. Gorkin
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:   (212) 969-2900

*Co-Counsel to the Trustee*

g:\wp80\trustee\caruso\itt educational - 86723901\adversary proceedings\dept. of ed\drafts\complaint.doc